IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MICHELLE McLAUGHLIN, | ) | Civil Action No.: 4:15-CV-00245-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Michelle McLaughlin ("Plaintiff") filed this action on January 16, 2015, seeking recovery against former employer Defendant CSX Transportation, Inc. ("CSX"). The Complaint asserts that, during her employment with CSX, Plaintiff was exposed to "gender harassing statements, jokes, graffiti, and paraphernalia, including having to work with and around a male employee who verbally harassed and threatened her." [ECF #1, p. 3]. The Complaint further asserts that since 2010, Plaintiff has been denied numerous promotions, which were given instead to male employees who were equally or less qualified than Plaintiff. [ECF #1, p. 3]. The Complaint also alleges that she suffered from a hostile work environment, difference in treatment due to gender, and retaliation, all in violation of Title VII, 42 U.S.C. § 2000e, *et seq*. and/or in violation of 42 U.S.C. § 1981.[1] [ECF #1, p. 3]. Plaintiff also alleged a cause of action for assault and battery, but she has since abandoned that claim.

_____

[1] This statute deals exclusively with discrimination based on race. Plaintiff testified at her deposition that she is not alleging she was discriminated against on the basis of race. [McLaughlin Dep. 61: 12-23 (Oct. 20, 2015)]. Within the objections to the Report & Recommendation, Plaintiff does not raise any objections or otherwise suggest she is pursuing a § 1981 claim. Accordingly, this Court will not analyze any of the issues raised on summary judgment under § 1981.

On January 28, 2016, Defendant filed a motion for summary judgment. [ECF #35]. On February 26, 2016, Plaintiff filed her response in opposition to Defendant's motion. [ECF #47]. Defendant filed its reply in support of its motion on March 7, 2016. [ECF #49]. In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.) this matter was referred to a Magistrate Judge for pretrial handling. This matter is now before the Court after issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Thomas E. Rogers, III. [ECF #61]. In the R&R, the Magistrate Judge recommends granting Defendant's motion for summary judgment in its entirety. This matter is now before the Court for review.

## Standards of Review

### I. Review of the Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The district court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The district court is obligated to conduct a *de novo* review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and

2

recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court reviews only for clear error in the absence of a specific objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes the showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

In this case, Defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." *Temkin v. Frederick Cnty. Comm'rs*, 845 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). If Defendant carries this burden, "the

burden then shifts to the non-moving party to come forward with fact sufficient to create a triable issue of fact." *Id.* at 718–19 (citing *Anderson*, 477 U.S. at 247–48).

Moreover, "once the moving party has met its burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, of conclusory allegations to defeat a motion for summary judgment. *See id*; *Doyle v. Sentry, Inc.*, 877 F. Supp. 1002, 1005 (E.D. Va. 1995). Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Baber*, 977 F.2d at 875 (citing *Celotex*, 477 U.S. at 324)). Moreover, the nonmovant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1223 n.7 (4th Cir. 1989). In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002).

## Factual Background and Procedural History

The facts of this case, including citations to the record, are set forth in the Magistrate Judge's R&R. [ECF #61, pp. 1-14]. Plaintiff acknowledges in her brief that the R&R provides an accurate recitation of the facts. [ECF #65, p. 3]. Briefly stated, Plaintiff began working for CSX as a clerk in Albany, New York in 1999 until she was terminated in December 2015. In

4

July 2010, she was accepted into CSX's Management Trainee Program as a trainee for CSX's Maintenance of Way Department, a group of employees responsible for repairing and maintaining railroad tracks. On April 1, 2011, Plaintiff completed this training and CSX placed her in the Florence Division in South Carolina as an Assistant Road Master (ARM). The Assistant Road Master position is now known as Road Master-In-Training (RMIT). After her placement as an ARM, Plaintiff applied to numerous position within CSX that involved less field work and less travel than the position she was in at that time. Plaintiff alleges that during her employment with CSX, she was treated differently than her male counterparts in that, upon her transfer to Florence, management "made it clear to (the Plaintiff) that she wasn't wanted there." [McLaughlin Dep. 179-181; 248, 249 (Oct. 20. 2015)]. Plaintiff further testified that despite her asking John Turner (Assistant Division Engineer), Chad Beverly (Roadmaster), Bobby Moore (Division Engineer) and Ron Elliott (Assistant Division Engineer), these individuals would never allow her to work out in the field with other labor teams, unlike other male ARMs or RMITs. [McLaughlin Dep. 104-05]. Plaintiff generally alleges that, unlike her male counterparts, CSX did not want to provide her adequate training, did not allow her to have her own high rail truck, and would not provide her "good" work assignments. [McLaughlin Dep. 103-04]. Defendant points out that Plaintiff actually did receive a high rail truck once she qualified for one and a truck became available. [Jeffery Dep. 15 (Oct. 23, 2015); Declaration of Ron Elliott, ¶ 3, Exhibit 3 to ECF #35]. Moreover, Plaintiff alleges that when she reported points of concern to the Ethics Hotline, the issues were never adequately addressed. Specifically, she alleges one incident with an employee, Ken Bass, where she claims that he yelled at her and threatened her in a meeting, but nothing was

5

done to remedy this problem. [McLaughlin Dep. 154-162]. Plaintiff timely filed a charge with the Equal Employment Opportunity Commission (the "EEOC") on July 31, 2013. At the same time, Plaintiff had ethics complaints filed against her on more than one occasion. [Linda Mundy Dep. 28-29 (Sept. 17, 2015)]; *see also* Exhibit 4 and 5 to Mundy Deposition.

Plaintiff testified that she began receiving counseling in May 2013 because she was having regular panic attacks. [ECF #35]. Her doctors note that the panic attacks began prior to her moving to Florence. Plaintiff went on short term disability from May until November 1, 2013. Around this time, she began working in Fayetteville and was given a very important project. However, she was also told that she had unused vacation time she needed to take, or risk losing that time at the end of the year. As a result, Plaintiff continued working until December 1, 2013. She went on short term disability again on January 2, 2014. In December of 2015, CSX terminated Plaintiff for two alleged reasons: (1) she had been on leave for nearly two years and had not taken the necessary steps to return to work; and (2) in the course of the litigation process for this case, CSX discovered that Plaintiff had secretly recorded conversations, at least one of which occurred in Florida where it is illegal to record a conversation without the consent of both parties. CSX denies that Plaintiff was subjected to the alleged discrimination and retaliation she refers to in her Complaint.

## Discussion

### I. R&R and Objections

In the R&R, the Magistrate Judge recommends limiting Plaintiff's recovery to events occurring on or after October 5, 2012, 300 days prior to the date that Plaintiff filed her

administrative charge with the EEOC. *See White v. BFI Waste Servs., LLC*, 375 F.3d 288, 292 (4th Cir. 2004). Plaintiff does not raise a specific objection to this portion of the Magistrate Judge's R&R. With respect to the different claims, the Magistrate Judge recommends the Court grant the defendant's motion for summary judgment on the basis that Plaintiff has not established, either by direct evidence or under the *McDonnell Douglas*[2] burden shifting scheme, a prima facie case of sex discrimination in that she has not shown an adverse employment action or presented competent evidence that similarly situated employees outside of her protected class received more favorable treatment with either direct evidence or under the burden shifting standard set forth in *McDonnell Douglas*.

Further, the Magistrate Judge recommends finding that Plaintiff has not submitted sufficient evidence to demonstrate that Defendant's explanation for its alleged treatment of Plaintiff was pretextual. With respect to Plaintiff's failure to promote claim, the Magistrate Judge recommends finding that Plaintiff cannot establish a prima facie case of discrimination because she fails to present evidence that the standards used for promoting other candidates were a mask for discrimination. The Magistrate Judge recommends finding Plaintiff fails to make a cognizable failure to provide adequate training and job support claim because she fails to show any evidence supporting her assertion that other employees received training opportunities not otherwise afforded to her, as well. The Magistrate Judge recommends granting summary judgment to Defendant with respect to Plaintiff's hostile work environment claim because under the Fourth Circuit's four factor approach to evaluate whether conduct is severe or pervasive, Plaintiff fails to establish a

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

cognizable claim. The Magistrate Judge considered Plaintiff's constructive discharge claim and recommended finding that Plaintiff failed to present sufficient evidence to satisfy the intolerability standard necessary to establish a constructive discharge claim.  Finally, with respect to Plaintiff's retaliation claim, the Magistrate Judge recommends granting Defendant's motion, finding that Plaintiff did not provide either direct evidence or evidence under the burden shifting framework of *McDonnell Douglas* to establish a claim for retaliation. In essence, the Magistrate Judge consistently points out that Plaintiff's does not provide specific evidence of discrimination with respect to any of these claims.

Plaintiff timely filed objections to the Magistrate Judge's R&R. These objections will be discussed in more detail below.  Briefly, Plaintiff objects to all of the Magistrate Judge's recommendations related to her specific claims.  She first objects to the finding that she has failed to present either direct or circumstantial evidence of Title VII sex discrimination.  Next, she objects to the finding that she failed to establish a prima facie case for failure to promote because she asserts that she established that Defendant's reasons were pretextual based upon her qualifications.  Plaintiff further objects  to the finding that she did not establish a failure to provide training and job support.  She next objects to the recommendation that she failed to present evidence giving rise to a hostile work environment claim under the *Harris* case.  She also objects to this finding because she asserts that she provided evidence of conduct that was sufficiently severe or pervasive to establish a hostile work environment claim.  With respect to the constructive discharge claim, Plaintiff objects to the recommendation she did not meet the standard of "intolerability," a standard even more stringent than the standard for hostile work

environment. Finally, Plaintiff objects to the conclusion that she did not establish a prima facie retaliation claim because she alleges that even with a lengthy passage of time, other evidence she presented established a causal connection between her engaging in protected activity and the alleged retaliation.

In its response, Defendant points out that Plaintiff's objections are not specific to the findings of the Magistrate Judge; rather, Plaintiff reiterates many, if not all, of the same arguments she raised in her initial brief. With respect to any direct evidence, Defendant asserts that Plaintiff has not come forward with sufficient evidence other than to claim that CSX employees made discriminatory statements. [ECF #69, p. 3]. This Court will consider each objection in turn.

### II. Title VII Sex Discrimination Claims

Plaintiff objects to the Magistrate Judge's determination that she did not provide sufficient direct evidence to establish a claim for sex discrimination under Title VII. With the exception of one failure to promote claim based on a position filled in Florence, South Carolina, this Court agrees with the Magistrate Judge that Plaintiff has failed to establish a prima facie case of sex or gender discrimination under Title VII.

Title VII makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against an individual with respect to his or her compensation, terms, conditions, or privileges, of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to establish a cause of action under Title VII, a plaintiff may either provide direct evidence or evidence sufficient to satisfy the burden-shifting scheme under *McDonnell Douglas*. Under the burden-shifting scheme

announced in *McDonnell Douglas*, the three-step framework involved is that a plaintiff must first prove a prima facie case of discrimination by a preponderance of the evidence. *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). If successful, then the defendant employer must present a legitimate, non-discriminatory reason for its employment action. *Id.* If the employer meets this burden, the presumption of unlawful discrimination is established and the burden shifts back to the employee to show the reason given by his or her employer was pretextual. *Id.* Ultimately, the plaintiff bears the burden of proving the employer intentionally discriminated against her. *Id.*

### A. Direct Evidence of Title VII Discrimination

In order to make a claim for discrimination, Plaintiff must provide evidence of an adverse employment action. An adverse employment action has been described as, "a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004). Plaintiff alleges several instances of an adverse employment action that are outlined in the R&R. [ECF #61, pp. 18-20]. First, this Court agrees with the Magistrate Judge that Plaintiff is limited to claims based on events that occurred on or after October 5, 2012. *Evans*, 80 F.3d at 962-63.[3] Several of Plaintiff's

---

[3]This Court may consider acts occurring beyond this period (October 5, 2012) under the continuing violation doctrine if Plaintiff attempts to establish a hostile work environment. Additionally, statements made more than 300 days before the filing of an EEOC charge, while not independently actionable, can be used to demonstrate context in which Plaintiff's allegations arose. *See generally Young v. Nat. Center for Health Servs. Research*, 828 F.2d 235, 238 (4th Cir. 1997).

allegations occurred outside of the limitations period provided for in the statute.[4]    For the allegations that do fall within the appropriate time period, Plaintiff first objects to the Magistrate Judge's finding that she has failed to present sufficient evidence of direct discrimination. However, this Court finds that contrary to Plaintiff's assertions, Plaintiff does not establish a direct claim of discrimination.

Direct evidence is "evidence of conduct or statements that reflect directly the alleged discriminatory attitude that bears directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995) (*abrogated on other grounds*). The kind of statements that suffice to show direct evidence of discrimination are those comments that do not require "inference or presumption." *Carter v. City of Miami*, 870 F.2d 578, 581-82 (11th Cir. 1989). Plaintiff must present evidence demonstrating a link between the remarks and the challenged decision or action. *E.E.O.C. v. CTI Global Solutions, Inc.*, 815 F. Supp.2d 897, 905-06 (D. Md. 2011).    Plaintiff has argued that there were numerous discriminatory employment actions made against her.    For each such act, she must show conduct or statements which reflect a discriminatory attitude or that are related to an adverse employment decision.    Plaintiff argues that "there were a multitude of gender based discriminatory statements made," and that there "were so many of these discriminatory statements in the record that it is difficult to tie one particular discriminatory result to one particular discriminatory statement or action." [ECF #65, p. 6].    In

---

[4] However, as the Magistrate Judge explains, despite these events not being independently actionable in a Title VII case, the statements or events may still be considered evidence demonstrating the context in which a plaintiff's claim arose.    The events may also be used to meet the burden of proof under *McDonnell Douglas* to show intent to discriminate and/or pretext. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 430, n. 3 (4th Cir. 2004).

essence, Plaintiff does not provide specific instances of discriminatory conduct and how it ties to an adverse employment action; nonetheless, the Magistrate Judge made a list of events or circumstances that Plaintiff argues evidences gender discrimination. [ECF #61, p 18]. These instances include interactions such as and including yelling at Plaintiff for not performing her job correctly, telling Plaintiff she had to earn the right to have a high rail vehicle (despite her contention that male ARMs/RMITs did not have this requirement), comments made by a supervisor in front of another employer, but not Plaintiff, allegedly regarding Plaintiff that, "[y]ou better shut that bitch up. You better take care of that bitch," telling her to use the bathroom on the tracks or outdoors while out testing cars, and making statements that she was not "wanted" at the Florence location. [ECF #61, p. 18-20].

A review of these statements do not reveal direct evidence of discrimination. This Court agrees that these statements include yelling, reprimands, criticism, directions to take alleged inferior work assignments, and statements suggesting Plaintiff was "stuffed down their throats." However, similar statements, including referring to a woman as a "bitch," have been found not to suffice as direct evidence of discrimination. In *Blankenship v. Warren County Sheriff's Dept.*, 939 F. Supp. 451 (W.D. Va. 1996), a terminated female office filed a lawsuit against her employer, alleging gender discrimination. She claimed that, among other examples, the sheriff, a captain, and her immediate supervisor made several remarks including calling her a "Robobitch," remarking that she was a "typical female driver," complimenting her paperwork skills, and criticizing her for being moody and worry about her family, was all sufficient evidence of gender discrimination. *Id.* at 455-456.

The *Blankenship* Court disagreed with the plaintiff, first explaining that in the Fourth Circuit, evidence of conduct or statements that both reflect directly upon the alleged discriminatory attitude and evidence that this attitude was directly related to the contested employment decision is required. *Id.* at 457. While pejorative remarks may indicate discrimination, stray or isolated remarks that are not connected to a negative employment decision cannot be considered direct evidence of discrimination. *Id.* This is true even when the comments come from a decision maker or a supervisor. *Id.* Similarly, the remarks made to Plaintiff (those that fall within the relevant time period) include criticisms about her job performance, unappealing job assignments, yelling or refusing to speak to Plaintiff, and remarks showing annoyance regarding Plaintiff's desire to have a bathroom on a rail car and her own high rail vehicle. Not only do these comments, on their own, fail to suffice as direct evidence on their own of discrimination by the Defendant, but Plaintiff has not explained how the comments are in any way related to an adverse employment decision. Accordingly, this Court finds that Plaintiff has not provided direct evidence to support any of her claims alleging sex discrimination.

### B. Burden-Shifting Scheme for Title VII Claims

Plaintiff objects to the Magistrate Judge's recommendation that she did not establish a prima facie case of a Title VII violation under the *McDonnell Douglas* burden-shifting framework. Plaintiff's Complaint includes several sex discrimination claims, including failure to promote, failure to provide adequate job training, hostile work environment, and constructive discharge. This Court will consider the objections to the recommendation of summary dismissal of these claims under the burden-shifting framework in turn.

13

1. Failure to Promote

With respect to this cause of action, Plaintiff objects to the Magistrate Judge's analysis of her alleged promotion denials and contends that her failure to promote claim should survive summary judgment. In total, Plaintiff identified eight promotions she claims she did not receive because Defendant discriminated against her because of her sex. The Magistrate Judge did not consider four of the promotions because they fell outside the limitations period (October 5, 2012). [ECF #61, p. 22]. Plaintiff does not object to this portion of the R&R, and this Court agrees with the Magistrate Judge that some of Plaintiff's allegations fall outside of the applicable time period. That leaves four promotions remaining that Plaintiff alleges she was qualified for, yet did not receive, in violation of Title VII.

Plaintiff's allegation that her employer refused to promote her because of her gender is a claim of disparate treatment. In establishing that she is the victim of disparate treatment, Plaintiff must show that it is more likely than not Defendant's decision not to promote her was motivated by discrimination. *Evans v. Tech. App. & Service Co.*, 80 F.3d 954, 959 (4th Cir. 1996). To make out a prima facie case for failure to promote, Plaintiff must show that (1) she is a member of a protected group; (2) she applied for the promotion; (3) she was qualified for the promotion; and (4) Defendant failed to promote her under circumstances that give rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). Furthermore, a Plaintiff alleging a failure to promote can prove pretext by showing he or she was better qualified, or by the use of circumstantial evidence that undermines the credibility of the reasons provided by the employer for its promotion decision. *See Anderson,* 406 F.3d at 269; *see*

14

*also Dennis v. Columbia Colleton Medical Center, Inc.*, 290 F.3d 639, 648-49 (4th Cir. 2002).

As an initial matter, this Court observes that other than times when Plaintiff was on medical leave, Defendant does not appear to dispute Plaintiff's qualifications for the promotions in question. At the same time, several of Plaintiff's performance reviews were made part of the record. Those performance reviews indicate that she performed poorly in her MOW training. For example, in 2010, her review indicates she retook a track safety test after failing to meet the performance standard. [ECF #35-1, p. 3]. She also turned in her track inspector checklist late, and her supervisor indicated she would need to spend more time learning the technical components of the job. [ECF #35-1, p. 3]. Furthermore, the following year, she was counseled regarding her performance. [ECF #35-1, p. 3]. Finally, evidence in the record suggests that at the same time Plaintiff alleges she was trying to climb the corporate ladder, Plaintiff was applying for positions that were not RM positions, but more or less "desk work." All of these facts tend to bolster Defendant's evidentiary support for its alleged decisions, based on job performance, not to promote Plaintiff in several of the above-referenced positions.

The first promotion in question was for the RM position in Cayce, South Carolina in August 2013. During that time, the record reflects that Plaintiff was on a medical leave of absence until November 1, 2013. Relying upon *Wilson v. Amtrack Nat'l R.R. Corp.*, 824 F. Supp. 55, 59 (D. Md. 1992), the Magistrate Judge recommended a finding that Plaintiff fails to establish a prima facie case for discrimination because she was on medical leave during the applicable time period. Further, the Magistrate Judge considered the testimony of Jenna Jacobs, a CSX 30(b)(6) designee, who testified that employees on medical leave are not considered for direct placement

15

positions such as RM position in Cayce. [ECF #61, p. 23]. Plaintiff objects to this finding, arguing that this is an inaccurate reading of *Wilson*. This Court reads *Wilson* as consistent with the Magistrate Judge's analysis of that case. In *Wilson*, the plaintiff was on medical leave for over four years at the time the position in question was filled. *Id.* The *Wilson* Court determined that a plaintiff must demonstrate that he or she was medically able to return to work in order to establish a prima facie case of discrimination. *Id.*

Further, the *Wilson* Court also discussed the fact that the defendant employer explained that other employees on medical leave were not permitted to return to work without providing sufficient documentation for the absence and for the ability to return to work. *Id.* at 60. The plaintiff did not refute this contention, nor was the plaintiff able to establish he was medically able to return to work. *Id.* at 59. Similarly, Plaintiff apparently was not cleared to return to work until October 2013, and her doctor recommended that she remain in Florence until she felt comfortable working elsewhere. [ECF #38-3, p. 2]. Furthermore, Plaintiff has not provided sufficient evidence to suggest that Defendant's explanation for failing to promote her to this position (i.e. the fact that she was on medical leave) was pretextual.

Finally, Plaintiff cites Seventh Circuit authority to suggest that *Mason v. Continental Illinois Nat. Bank*, 704 F.2d 361, 366 (7th Cir. 1983) held that whether a plaintiff was qualified for a position cannot be decided on summary judgment. First, this was not the holding espoused in *Mason*; rather, *Mason* affirmed the grant of summary judgment to an employer holding that absent any direct or indirect evidence of discrimination as to job promotion, a plaintiff has no reasonable possibility of proving at trial that defendant's reasons for failure to promote were

16

pretextual. *Id.* at 366-67.  Second, Plaintiff's lack of qualifications was not the only reason given

for Defendant placing someone else in this position.   Finally, Plaintiff simply asserts she was

"climbing the ladder" and, in her deposition, provides her own self-serving belief that she was

qualified for the position.   She does also offer the testimony of employee Ernest McWhite,[5] who

testified that Plaintiff was qualified for several promotions.   However, Mr. McWhite was not

responsible for making this hiring or promotional decision, at least with respect to Plaintiff.   In

considering promotion qualifications, it is the decisionmaker's perception that matters. *King v.*

*Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).  Plaintiff thus has failed to rebut Defendant's reason

for not promoting her to this position nor provided evidence that it was pretextual. Accordingly,

this Court rejects Plaintiff's failure to promote claim for this position.

Furthermore, relative employee qualifications are recognized by the courts as valid, non-

discriminatory bases for choosing one candidate over another. *Evans*, 80 F.3d at 960. Plaintiff

must make a strong showing that her qualifications are superior to those who actually received

the promotion. *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 261 (4th Cir. 2006). As an

initial matter, this Court points out that in her objections, Plaintiff makes general allegations

regarding all of the available positions that she was more qualified than the individual promoted.

However, she does not specifically object to the Magistrate Judge's analysis of the specific reasons

the Defendant gave for each position.   Accordingly, she does not specifically explain why her

qualifications were superior to anyone else, other than to allege each time she was the better

---

[5] It appears from the record that Ms. McLaughlin testified in a claim made by a Mr. McWhite against CSX, which subsequently forms the basis of her retaliation claim.

17

candidate.

With respect to the RM position in Roanoke Rapids, North Carolina, Plaintiff and Defendant dispute when the position was filled. For the purposes of summary judgment and in viewing the evidence in a light most favorable to Plaintiff, this Court will analyze this claim based on Plaintiff's recollection of the date the position was filled, that is February 2013. During this period of time, Plaintiff had returned from medical leave. Accordingly, Plaintiff would not necessarily be unqualified based on her medical leave status. In its brief, Defendant does not argue that Plaintiff has not met her initial burden for her failure to promote claim regarding this position. This is because Defendant argues that the position was filed in November of 2013, and Plaintiff was on medical leave. However, we are analyzing this position based on Plaintiff's recollection of the date it was filed, and reject Defendant's analysis for this reason. Therefore, we assume for purposes of this motion that Plaintiff has met her initial burden and next determine whether Defendant has provided a legitimate, nondiscriminatory reason for its employment decision to promote someone other than Plaintiff.

Defendant argues that Jonathan Turner was selected for this position because he possessed a college degree in engineering, while Plaintiff did not. [ECF #35-1, p. 18]. In her response to the summary judgment motion, Plaintiff argues that she was better qualified that Mr. Turner because she had more experience than him as an ARM/RMIT, she had been at the Florence division longer, and she was an internal trainee, while Mr. Turner was an external hire. [ECF #47, p. 15]. She also produces the testimony of Ernest McWhite, who felt Plaintiff was better qualified than Mr. Turner. However, other cases in the Fourth Circuit have considered a Plaintiff's

contention that she is more qualified than another employee and determined that this alone does not establish an employer's reason for promoting another candidate is pretextual. *See Moore v. Mukasey,* No. 07-1513, 2008 WL 5424083, at *4 (4th Cir. Dec. 30, 2008) (explaining that a Title VII plaintiff cannot simply rely on his own qualifications as proof of pretext if the assertion is that his qualifications are similar or only slightly superior to the person selected). Accordingly, this Court finds that Plaintiff has failed to rebut or otherwise establish it was pretextual with respect to Defendant's reasons for its decision to hire Turner.

The other two positions at issue were not during Plaintiff's medical leave and include a November/December 2012 RM position in Dillon, South Carolina and a February 2013 RM position in Florence, South Carolina. Defendant does not appear to argue that Plaintiff did not meet her initial burden on her failure to promote claims as to either of these positions; thus, this Court must again determine whether Defendant has provided a legitimate, nondiscriminatory reason for its employment decision to promote someone other than Plaintiff in these two positions.

Defendant produced the testimony of Mr. Elliott, Mr. Jacobs, and Randy Parrish, all of whom participated in the interview process with Plaintiff for the RM position in Dillon. According to these individuals, Plaintiff provided one technical answer that did not comport with CSX rules and procedures. [Jenna Jacobs Dep. 117-20, 126, 128-29 (Jan. 8, 2016); Ron Elliott Dep. 129-32 (Oct. 21, 2015)]. According to Defendant, Plaintiff displayed a "lack of technical knowledge" for this position. Additional testimony was provided by these individuals to indicate that the employee chosen also provided a better ethical response to a question, had significant experience, military experience, and a master's degree in industrial engineering. This Court finds

19

that Defendant has met its burden to prove a legitimate, nondiscriminatory reason for hiring Mr. English, rather than Plaintiff. In response, Plaintiff argues that she was also experienced, and in fact, taped her interview with the company because she felt she was being discriminated against at that time. [McLaughlin Dep. 228].  She no longer has a copy of this recording because she alleges she recorded over it; however, she did play it for Dick Spatafore, who was the Director of Program Construction at that time. [McLaughlin Dep. 224-26, 229]. Still, the record reveals that even Mr. Spatafore admitted she gave one incorrect technical answer. [Spatafore Dep. 163, 190 (Oct. 22, 2015).]

Plaintiff fails to come forth with sufficient evidence to show that Defendant's proffered reasons for choosing Mr. English were pretextual or that its decision to hire someone else was intentional discrimination.  In her objections, Plaintiff relies heavily upon her own self-assessment to "prove" Defendant's reason for not promoting her are "unworthy of credence." *See Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999) (stating that conclusory or speculative allegations do not suffice to defeat summary judgment, nor does a "mere scintilla of evidence."). In fact, she has not proven that she was the better qualified candidate, other than to rely upon her own assertions and that of Mr. McWhite, who again was not involved in the hiring decision. Unsubstantiated allegations and bald assertions concerning one's own qualifications and shortcoming of other employees do not create a genuine issue of material fact. *Evans*, 80 F.3d at 960.  Accordingly, this Court finds that Plaintiff did not rebut Defendant's reasons for hiring another candidate or otherwise show that the proferred reason given was pretextual.

Finally, this Court considers the available RM position in Florence, South Carolina, that

20

became available in February 2013. With respect to this position, Defendant asserts that it directly placed Jonathan Thomas into this position because he had all of the qualifications Defendant was looking for with respect to this position.  Furthermore, after Plaintiff's interview for the Dillon position (just three months earlier), Mr. Elliott explained that the decision makers did not feel Plaintiff was ready for a roadmaster position. [Elliott Dep. 160].  In addition to this reason, although Mr. Thomas was with the company less time, Defendant felt Mr. Thomas was more qualified for the position than Plaintiff. [Jacobs Dep. 126; Elliott Dep. 152].

In response, Plaintiff provides the following circumstantial evidence applicable to this available promotion: (1) Plaintiff argues that she had more time spent with the company; (2) Mr. Thomas did not have the same railroad experience;[6] (3) there had never been a female manager in the Florence division; and (4) she was better qualified in that she had been trained by CSX. [ECF #65, pp. 9-10].  Finally, she argues that despite the fact that Defendant chose Mr. Thomas as a direct hire, without offering an interview to Plaintiff, they subsequently asked her to cover the position of roadmaster while he was out on leave shortly after he was offered the promotion. [ECF #65, p. 10]. In essence, she questions Defendant's stated reason for not promoting her because they claimed she was not "ready to be a roadmaster," yet they used her as a temporary fill-in for that position.  Plaintiff was also transferred to Florence shortly after completing her training and placed as an ARM.  This Court finds that with respect to the Florence 2013 position,

---

[6] Whether Mr. Thomas had any railroad experience appears to be in dispute, based on the somewhat unclear testimony provided by Mr. Elliott in his deposition when discussing Mr. Thomas's qualifications: "I didn't know him, they hired him, that he had worked in an Augusta aggregate company that we deal with getting rock.  And so he had also worked on cars, track, and moot cars. So he had a lot of - - I won't say railroad, but company-wide - - but he had railroad experience." Elliott Dep. 153: 5-12 (Oct. 21. 2015).

Plaintiff has provided sufficient evidence to suggest that Defendant's preferred reasons for directly hiring Mr. Thomas's may have been pretextual. Accordingly, Plaintiff has carried her burden with respect to her claim regarding the failure to promote her in this position, and this Court denies granting summary judgment as to this claim.

   2. Training and Job Support Claims

Plaintiff objects to the Magistrate Judge's recommendation that Plaintiff failed to present sufficient evidence of a denial of training opportunities or job support due to sex discrimination. In essence, Plaintiff alleges that the Magistrate Judge improperly weighed the evidence, which is a matter reserved for a jury. In order to present a prima facie discriminatory denial of training claim, Plaintiff must show: (1) he or she is a member of a protected class; (2) Defendant provided training to its employees; (3) Plaintiff was eligible for this training; and (4) Plaintiff was not provided training under circumstances giving rise to an inference of discrimination. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649-50 (4th Cir. 2002) (citing *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998)). Where as here, if a plaintiff does not provide direct evidence of discrimination, she must proceed under the *McDonnell Douglas* burden shifting scheme. *Thompson*, 312 F.3d at 649.

Plaintiff alleges it is "undisputed" that throughout her employment she repeatedly sought good training assignments, citing to her own deposition testimony as evidence. [ECF #47, p. 27]. She states that until December 2013, at which time she received an important assignment, she was never able to obtain any good training opportunities. Further, she alleges that the male managers "went out of their way to be sure that the plaintiff failed in all of her work endeavors," and that

22

they made sure all good training assignments went to males. [ECF #47, p. 27]. Plaintiff claims

that the male managers "clearly" did not want Plaintiff to succeed as evidenced by statements and

the work assignments given to her.  However, Plaintiff acknowledged in her deposition that part

of her job was to learn the lines of the road and work with track crews in the field. [McLaughlin

Dep. 66-69].  She also alleges as support for her claim that she and Ernest McWhite identified

some male ARMs who received, in their opinion, better training and work assignments.  In fact,

Plaintiff argues in her objections that the Magistrate Judge "readily dismisses Plaintiff's testimony

regarding training and support offered to her male counterpart."  To the contrary, Plaintiff does

not provide any concrete, specific example of a time when, due to her sex, Plaintiff was denied

a training opportunity that was then offered to another male employee.  Instead, Plaintiff generally

alleges, at most, that she was at odds with several employees, and she suspects she was treated

differently than other male employees.  Nor does Plaintiff provide concrete examples of training

sessions or opportunities where a male received the opportunity while it was not offered to her,

as well. Thus, Plaintiff does not meet her burden of proving sex discrimination in training and job

support based upon these facts.  The Fourth Circuit has previously found similar conclusory

allegations insufficient to give rise to an inference of discrimination. *See Purchase v. Astrue*, 324

Fed. Appx. 239, 242 (4th Cir. 2009) (finding that the plaintiff's contentions that her employers

did not provide her with the same training materials as other white employees was conclusory and

insufficient to support her claim).  Therefore the burden would not shift to Defendant to prove

a legitimate nondiscriminatory reason for providing training classes to one group of employees,

but not to females.  However, Defendant does provide legitimate and specific examples to rebut

23

any perceived lack of job training claimant.

In contrast to the conclusory allegations provided by Plaintiff to support her failure to provide training claim, Defendant identified two specific instances where Plaintiff declined a job training opportunity.  These include the job opportunity at Hamlet yard, and the large track system surfacing and rail installation offered to her in December 2013. With respect to this second opportunity, Plaintiff felt she was being forced to take her vacation during the month of December; otherwise, she would lose that time.  However, Plaintiff acknowledged that other employees had opted to take training opportunities and forego their extra vacation days in order to receive participate in training job opportunities. [McLaughlin Dep. 202: 2-11 (Oct. 21, 2015)]. She alleges that the job opportunity at Hamlet yard, while a very busy hump yard, was unnecessary for her because she had already worked at a busy hump yard. [ECF #47, p. 8]. Thus, she argues that she was only provided this opportunity to force her to quit. [ECF #47, p. 8]. However, other than her own belief that the managers were attempting to force her out by giving her this training opportunity, she does not provide any evidence that this training opportunity was only given to her because she was a female.   Because Plaintiff has failed to point to any specific opportunities that were only provided to employees who were male and denied her because she is female, coupled with the fact that Defendant points to opportunities that, when presented to Plaintiff, were turned down, this Court finds that she has failed to satisfy at least one of the prongs of the *Thompson* test.  Accordingly, this Court grants summary judgment as to this claim.

3. Hostile Work Environment

Plaintiff objects to the Magistrate Judge's recommendation that she did not present evidence

sufficient to give rise to a hostile work environment claim. She argues the Magistrate Judge's recommendation was based on a "grossly inaccurate" reading of *Harris v. Mayor and City Council of Baltimore*, 429 F. App'x 195, 201 (4th Cir. 2011). She further objects to the recommendation that summary judgment be granted to Defendant on this claim because she argues the Magistrate Judge is incorrect in finding that the conduct complained of was not sufficiently severe or pervasive to establish a claim for hostile work environment. [ECF #65, p. 14]. Plaintiff does not point to which allegations she contends support her hostile work environment claim. However, the Magistrate Judge, in the R&R, succinctly culls through the record to ascertain which allegations could conceivably fall under this category. [ECF #61, p. 30]. In her objections, Plaintiff does not argue that this otherwise exhaustive list did not encompass all of her allegations for a hostile work environment. Accordingly, we will limit our review to these claims.

An individual may establish a violation of Title VII prohibiting sex discrimination by providing sufficient evidence that the discrimination based on sex created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To establish such a claim, a claimant must show that the offending conduct was (1) unwelcome; (2) based on her sex; (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment; and (4) imputable to her employer. *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). With respect to the second element, a trier of fact could find that a woman who is the individual target of open hostility *because of her sex*, has proven she was on the receiving end of sex-based discrimination. *Id.* at 331-332 (emphasis added). For conduct to be "sufficiently severe or pervasive," a court must look to all circumstances to

25

determine whether the environment was hostile or abusive. *Smith v. First Union Nat. Bank*, 202 F.3d 234, 242 (4th Cir. 2000). Examples of this include the frequency of the alleged conduct, its severity, whether it is physically threatening or humiliating or instead a mere offensive utterance, and whether it unreasonably interferes with work performance. *Id.* However, workplace harassment between men and women is not automatically labeled discrimination because of sex merely because the words used have sexual connotations. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Furthermore, workplaces are not under a legal duty to purify the language of the office or workspace. *Carr v. Allison Gas Turbine Div., Gen. Motors, Corp.*, 32 F.3d 1007, 1010 (7th Cir. 1994). A hostile work environment claim is actionable if it establishes one that is "hellish," not one where the occasional vulgar banter or language with sexual innunedo may be heard. *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997).

Here, Plaintiff's first objection to this finding centers specifically on her allegations that another employee heard her referred to as a "bitch". [ECF #65, pp. 13-14]. The cases relied upon by Plaintiff are easily distinguishable from the facts present in this case. In *Harris v. Mayor and City Council of Baltimore*, 429 F. App'x 195, 201 (4th Cir. 2011) and *E.E.O.C. v. Central Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009), the complaining employees were referred to as "bitches" (along with other offensive terms) on a *daily* basis. Hence, the derogatory language involved was frequent and severe, in large part by the very fact that it was consistently used "on a daily basis" to refer to the employees. By contrast, Plaintiff alleges in her Complaint that Chad Beverly bragged that he "got rid of that bitch, and she's not coming back." [ECF #1, p. 4]. Within her Complaint, she does not otherwise allege anybody else called her that name. At her

26

deposition, she testified that Mr. Turner referred to her when speaking to another manager as a "f-ing bitch road master, that f-ing road master, female road master." [McLaughlin Dep. 81]. However, this comment does not appear to have been made in relation to any particular adverse action. Likewise, she produced the testimony of another employee who overheard a manager referring to someone, presumably Plaintiff, as a "bitch."   Additionally, the record reflects that Plaintiff and several of the managers did not always work well together; thus Plaintiff does not provide sufficient evidence that these isolated comments, while derogatory in nature, were because her managers were discriminatory towards women.  In other words, she does not come forward with sufficient evidence that these isolated comments were made because her managers were discriminatory and were based on her sex. *Oncale*, 335 F.3d at 339.

Further, Plaintiff does not allege in her deposition that this happened on more than a few isolated occasions, or that she was frequently referred to in this way over the course of the several years she was working in the Florence division.  Plaintiff alleges that the comments do not have to be directed at her to be considered offensive, and she cites to the dissent's rationale in *Taylor v. Virginia Union University*, 193 F.3d 219, 251-52 (4th Cir. 1999) as support for her contention. This Court acknowledges that an employee's knowledge of harassment or sexist comments is not a requirement for admitting that type of testimony. *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 110 (3rd Cir. 1999) (abrogated on other grounds).  However, all offensive language is not direct evidence of discrimination, and an isolated, stray derogatory mark may not suffice as proof of hostile work environment unless there is some nexus between the offensive remark and the employment events in question. *Onuoha v. Grafton School, Inc.*, 182 F. Supp. 2d 473, 479-80 (D.

27

Md. Jan. 24, 2002). The individual must also perceive the environment to be abusive, and the fact that the plaintiff was unaware that the comments were made at the time they were made would tend to dilute this perception. *Id.* at 482-83 (finding that two incidents where an individual's supervisor used a derogatory, racial slur toward two of the plaintiff's coworkers did not satisfy the hostile work environment standard because there was no evidence that Plaintiff was present or even aware of it at the time it happened). This Court finds that these stray remarks where Plaintiff was allegedly referred to as a "bitch" (once by a supervisor), though odious, do not meet the standard to establish a hostile work environment.

Plaintiff also appears to lodge a separate objection to the Magistrate Judge's finding that the conduct complained of was not sufficiently severe and pervasive. After providing a plethora of case law concerning the standard for determining whether conduct was "severe or pervasive" enough to state a claim, she again relates this case law back to the fact that she was called a "bitch." [ECF #65, pp. 14-15]. This Court also notes that Plaintiff alleges in her pleadings that she was the subject of ridicule or harsh tones by her managers. Even considering the incident with Mr. Bass, this Court does not find that these isolated incidents rise to the level of creating a "hellish" work environment. *Perry*, 126 F.3d at 1013. Again, this Court does not find that Plaintiff provides sufficient evidence to meet the "severe or pervasive" standard. Accordingly, this Court overrules Plaintiff's objections regarding her hostile work environment claim and find that Defendant should be granted summary judgment as to this claim.

4. Constructive Discharge

Plaintiff objects to the Magistrate Judge's recommendation that summary judgment be

granted in favor of Defendant because Plaintiff has failed to present sufficient evidence to establish a constructive discharge claim.  In response, Defendant argues that Plaintiff cannot demonstrate that she meets the standard of intolerability. Defendant also argues that Plaintiff cannot establish a constructive discharge claim because she did not quit her job; rather she was terminated in December 2015.

To state a claim under a theory of constructive discharge, a plaintiff must show that her employer "*deliberately* made an employee's working conditions *intolerable*, and thereby forced her to quit her job. *See Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1349-50 (4th Cir. 1995) (citing *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)) (emphasis added). In other words, Plaintiff here must prove two elements: that Defendant's actions were deliberate, and of such a nature that working conditions at CSX were intolerable for Plaintiff.  "Deliberateness" can exist when the actions a plaintiff complains of "were intended by the employer as an effort to force the employee to quit." *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir. 1992). Intolerability is assessed by an objective standard of whether a "reasonable person" in the plaintiff's position would feel compelled to resign from her position. *Id.*

In Defendant's response, it argues that implicit in the case law is the requirement that a Plaintiff actually *quit* her job in order to make out a prima facie constructive discharge claim. Here, in May of 2013, Plaintiff started receiving counseling from JLB Counseling Agency as a result of suffering from regular panic attacks, the inability to focus, poor sleep and loss of appetite. [McLaughlin Medical Records, MAZGAJ-000001, attached as an Exhibit to Defendant's motion].  According to her medical records, these symptoms existed prior to Plaintiff moving to

29

Florence, South Carolina. [McLaughlin Medical Records, MAZGAJ-0000019, attached as an Exhibit to Defendant's motion]. At the same time, her daughter moved to live with her in South Carolina in August 2013, which Plaintiff's doctor noted increased her anxiety. [McLaughlin Medical Records, MAZGAJ-0000019, attached as an Exhibit to Defendant's motion]. In August 2013, Plaintiff worked one day in Charlotte, but as indicated in her medical records, she wanted to remain in Florence now that her daughter moved there. [McLaughlin Medical Records, MAZGAJ-000004, attached as an Exhibit to Defendant's motion]. From mid-May 2013 until November 1, 2013, Plaintiff was on short term disability. On November 4, 2013, Plaintiff reportedly began working in Fayetteville and remained in there until December 5, 2013. [ECF #47, p. 12]. Around this time, Defendant's Human Resources Department informed Plaintiff that she had accrued vacation time that needed to use prior to year's end, otherwise she would lose that time. [ECF #47, p. 12]. Plaintiff chose to use the rest of her vacation time through year's end of 2013. [ECF #47, p. 12]. On January 2, 2014, Plaintiff went back on short term disability. On January 14, 2014, Plaintiff informed her doctor she would not be returning to work. [McLaughlin Medical Records, MAZGAJ-0000037, attached as an Exhibit to Defendant's motion]. In December 2015, Defendant terminated Plaintiff's employment because, at that point, she had been on leave for two years and had not taken steps necessary to return to work. Further, throughout the course of this litigation, Defendant discovered Plaintiff made clandestine recordings of conversations she had with Defendant's managers that violated state law in Florida where one of these managers was located. [Dep. of Michelle Ross 78 (January 8, 2016); McLaughlin Dep. 16, 18 (Oct. 20, 2015)].

This Court observes that in its review of the constructive discharge case law, the elements

30

listed above are applied when an employee feels compelled to quit her position. Nonetheless, assuming Plaintiff felt compelled to remain away from position at CSX, this Court finds that Plaintiff has not set forth sufficient evidence to show that Defendant's actions were either deliberate or rose to the level of creating an intolerable work environment. We previously determined that Plaintiff failed to make a claim for hostile work environment because she was unable to meet the "severe and pervasive" standard necessary under that analysis. Courts have determined that the standard for proving hostile work environment is lower than the standard for proving a constructive discharge claim. *See Tawwaab v. Virginia Linen Service, Inc.*, 729 F. Supp.2d 757, 783 (D. Md. 2010) (citing *Tutman v. WBBM-TV, Inc.,/CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000)) ("noting that [w]orking conditions for constructive discharge must be even more egregious than the high standard for hostile work environment" before finding that an employee on medical leave who alleged he was being harassed did not prove that a reasonable employee would have found the work environment so intolerable to force him to quit). It follows that if Plaintiff is unable to meet the lower standard, then she will be unable to meet the more challenging standard to prove constructive discharge. Additionally, the evidence Plaintiff points to as suggestive of meeting the standard for proving constructive discharge does not rise to the level required to support this claim.

In her objections, Plaintiff accurately sets forth the standard for constructive discharge, but her proffered evidence that she was constructively discharged is that she was branded a "troublemaker," she learned that, at one point, she was referred to as a "bitch," and she felt she was assigned duties not assigned to male employees. [ECF #67, p. 18]. She cites to *Brown v.*

31

*Eckerd Drugs, Inc.*, 663 F.2d 1268 (4th Cir. 1981) for the proposition that employees who are treated rudely or spoken to in a condescending or abusive manner, then a constructive discharge action will lie.  This is not so. The employee in that case, Ms. Brown, established that she was treated rudely by an employee who was white (Ms. Brown is black) in that the employee would repeatedly bump her chair and management did nothing about it, she was referred to by a derogatory, racial slur in her presence, she was not allowed assistance on computer format changes, she was provided an "interpreter" at an office meeting to rephrase her answers, suggesting she could not communicate effectively, she asked that another black employee be able to sit in on the meeting and the request was denied, and she was addressed as a "girl" and a "fool" in front of others at the meeting, and it was suggested to her that she would be happier working somewhere else. *Brown*, 663 F.2d at 1273-74.

By contrast, Plaintiff did not allege that she ever actually heard anyone call her a "bitch." Moreover, the examples provided by Plaintiff to show that she was "pushed out" amount to complaints regarding the types and kinds of work assignments she was assigned, which were part of her job description.  Defendant argues that these assignments provided Plaintiff were based on Plaintiff's work performance. To the extent Plaintiff alleges she was not spoken to at meetings, felt uncomfortable, was sent to faraway locations or locations she deemed were undesirable, was not assigned equipment as quickly as she perceived others received, she has not set forth sufficient evidence under the appropriate case law to prove her working conditions were "intolerable."  She has not provided direct or circumstantial evidence to suggest any of these alleged actions were done deliberately to force her to quit. *See Taylor v. VA Union Univ.*, 193 F.3d 219, 237 (4th Cir.

1999) (Deliberateness exists if used to force a Plaintiff to quit). Plaintiff does allege that when she first transferred to the Florence division in 2011 (approximately three years prior to when she was terminated), she was told she "wasn't wanted there" and "no one wanted to train her," but outside of these isolated comments, which do not appear to be associated with the fact that she was a female, Plaintiff does not allege any other behavior that would rise to the level of intolerability under the circumstances. Additionally, Plaintiff did not quit. Title VII is not a general civility code, and its proper use filters out complaints that happen in the ordinary tribulations of work, such as occasional use of bad language and teasing. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Accordingly, this Court finds that because Plaintiff cannot establish a claim for constructive discharge, the Defendant's motion for summary judgment as to this claim should be granted.

### C. Retaliation

In his R&R, the Magistrate Judge recommends finding that Plaintiff did not establish a prima facie case of retaliation. In response, Plaintiff raises two objections to this recommendation, including her objection to the finding that she did not suffer an adverse employment action with respect to training, and her objection that she believes the Magistrate Judge erred in finding that no causal connection exists between her promotion denials and the protected activity (providing deposition testimony) in this case.

In order to establish a prima facie retaliation claim, an employee must show the following: (1) she was engaged in protected activity; (2) the employer took adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse

33

action. *Ross v. Communic. Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).[7]  Undoubtedly, providing deposition testimony in a race discrimination case against one's current employer is considered "protected activity." *See, e.g., Glover v. South Carolina Law Enforcement Div.*, 170 F.3d 411 (4th Cir. 1999) ("It is plain from the record that Glover suffered an adverse employment action,[8] and that there was a causal connection between that action and her deposition testimony. It is also plain that testifying in a deposition in a Title VII case generally constitutes protected activity under section 704(a)'s participation clause.").  The question thus becomes whether Plaintiff identifies an adverse employment action; and if so, how closely connected it is to her protective activity, namely the deposition testimony she gave on August 11, 2011.

In her objections, Plaintiff argues that while case law suggests temporal proximity may be lacking in her case, other evidence of retaliation can suffice to meet the causal connection element. [ECF #65, p. 19]. Before this Court analyzes whether a causal connection exists, this Court notes that Plaintiff again speaks in conclusory terms regarding the "adverse employment action" that she feels occurred as a result of retaliation.  She states that her brief was "littered with instances of retaliatory animus between the adverse employment actions–comments made by co-workers and

---

[7] The United States Supreme Court has clarified that in the retaliation context, a less strenuous standard is applied to define an "adverse employment action." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006).

[8] Adverse employment actions may include a significant change in employment status, a failure to promote, reassignment with significantly different responsibilities, or a decision causing a change in benefits. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).  Plaintiff highlights in her response brief that lack of training and denial of numerous promotions were adverse employment actions. [ECF #47, p. 34].  However, this Court has determined that other than a promotion denial in 2013, approximately two years after Ms. McLaughlin sat for the August 2011 deposition, she does not make a prima facie case to establish discrimination on any of these grounds.  Furthermore, in her objections, she does not establish a causal connection between her deposition testimony and any of these promotion denials.

34

supervisors in the Florence Division, harassment, and poor treatment." [ECF #65, p. 20]. However, she does not provide any more specific detail as to what poor treatment or harassment she is referring to that came as a result of retaliation. For example, Plaintiff states she was demeaned, and that her supervisors "said derogatory things about her to other division managers." [ECF #47, p. 2]. She also alleges that after she gave deposition testimony, she was "shunned and shamed on a daily basis by Turner and Beverly and the rest of the male managers on the Florence Division, with Chad Beverly publicly refusing to talk to her or involve her in any work done on the division." [ECF #47, p. 3]. She asserts that other employees overheard her being referred to as a bitch from time to time. [ECF #47, p. 4]. Otherwise, many of the instances she complains of as discrimination (for example, being told to relieve herself in the woods if she was on a testing car), occurred before she ever gave deposition testimony.

In her objections, she states her participation in protected activity subjected her to "progressive disciplinary measures" without actually identifying what those might be or when they occurred. [ECF #65, p. 20]. Nonetheless, this Court will consider whether a causal connection exists between the time Plaintiff provided deposition testimony in Mr. McWhite's case and the alleged adverse employment actions. In *Burlington*, the Supreme Court explained that in the retaliation context, a less strenuous standard is used to define "adverse employment action." 548 U.S. at 64. At the same time, the retaliation provision protects individuals only from retaliation that produces an injury or harm. *Id.* at 67. A plaintiff must show that a reasonable employee would have likewise found the challenged action materially adverse. *Id.* at 68. As outlined above, Plaintiff essentially speculates that the supervisors sought to retaliate against her by ignoring

35

her or giving her undesirable job tasks. Furthermore, as discussed earlier, our limitations period for considering Plaintiff's claims is October 5, 2012. This is more than a year after Plaintiff engaged in the protected activity of giving deposition testimony. She has not provided sufficient evidence that any of the jobs to which she was not promoted were not given to her in retaliation of her actions. In fact, the first promotion she alleges she was unfairly denied was in December of 2011, nearly four months after she sat for the deposition in Mr. McWhite's case. This Court does not find any facts or evidence brought forth by Plaintiff that provide the requisite causal connection to show that any adverse employment action (whether it include lack of training or job promotion denials) was done as a result of the fact that she gave deposition testimony in another case. Accordingly, this Court grants Defendant's motion for summary judgment on Plaintiff's retaliation claim.

## Conclusion

The Court has thoroughly reviewed the entire record, including all pleadings and exhibits filed in this case. For the reasons stated above, this Court **ADOPTS** in part and **REJECTS** in part the Magistrate Judge's Report & Recommendation [ECF #61]. Defendant's motion for summary judgment [ECF #35] is **GRANTED** in part and **DENIED** in part. Plaintiff has alleged sufficient facts to support her failure to promote claim with respect to the February 2013 Florence, South Carolina position, and accordingly that claim survives summary judgment. Summary judgment is granted as to the remaining claims.

**IT IS SO ORDERED.**


Florence, South Carolina                                        s/ R. Bryan Harwell
September 29, 2016                                              R. Bryan Harwell
                                                               United States District Judge